UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRANO IVEZAJ,

                Plaintiff,                              Case Number 14-12286

v.                                                  Honorable David M. Lawson

DETROIT PUBLIC SCHOOLS,
KAREN RIDGEWAY, LAURI
WASHINGTON, and SHIRLEY
MOBLEY WOODS,

                Defendants.

_____/

**OPINION AND ORDER GRANTING DEFENDANTS' SECOND MOTION
FOR SUMMARY JUDGMENT AND DISMISSING
AMENDED COMPLAINT WITH PREJUDICE**

This matter is before the Court on the defendants' second motion for summary judgment, filed upon leave granted. After he was demoted, the plaintiff filed a three-count complaint, once amended, which sets forth claims for (1) denial of procedural due process, via 42 U.S.C. § 1983 (Count I), (2) gender and national origin discrimination contrary to Title VII and the Michigan counterpart (Count II); and (3) breach of contract (Count III). In their first summary judgment motion, the defendants sought dismissal of Count II only. The Court granted that motion. In their second motion, which the plaintiff opposes, the defendants seek dismissal of the remaining counts. The motion papers adequately set forth the relevant facts and law, and oral argument will not aid in the disposition of the motion. Therefore, it is **ORDERED** that the motion be decided on the papers submitted. *See* E.D. Mich. LR 7.1(f)(2). The undisputed facts show that the plaintiff was afforded timely and adequate process under law before the defendants took any adverse job action against him, and the defendants did not breach the plaintiff's employment contract when they demoted and then terminated him for violating a specific term that constituted just cause for termination. The

Court, therefore, will grant the defendants' second motion for summary judgment and dismiss the case.

I.

The facts of the case were set forth in detail in the Court's earlier opinion and need not be repeated here. The following summary will suffice. Plaintiff Frano Ivezaj, an Albanian American citizen, was employed by defendant Detroit Public Schools for 27 years, which included 15 years as a teacher and 12 years as a school administrator, under a series of one-year contracts. His last contract covered the period from July 1, 2012 to June 30, 2013. His employment contract stated that he could not be terminated except for just cause, and the grounds constituting just cause were specified. They included "violations of Work Rules and District policies and procedures, and poor job performance"; "misconduct in office"; "fraud"; and "violation of any District policies, procedures, or directives, including . . . failure to disclose [] conflicts or potential conflicts."

In the fall of 2011, after defendant Karen Ridgeway was appointed as Superintendent of Academics for defendant Detroit Public Schools, the plaintiff was accused of several contract and District policy violations. The accusations came after an investigation conducted by Marilyn Beard, an investigator from the district's Office of Inspector General. Lauri Washington, from the District's human resources department, sent the plaintiff a letter on May 30, 2012 informing him of the alleged violations and scheduled a hearing for June 12, 2012.

DPS Human Resources Assistant Director Mary Anderson conducted the hearing on June 12, 2012. The plaintiff and his attorney of record were present and participated. The plaintiff testified and offered evidence. Also present were defendant Ridgeway, defendant Beard, and witnesses Tracy Joshua, Gwendolyn Washington, Gregory Stokes, Jacquelyn Benson, Sheryl Jones,

-2-

Marcia Jenkins, Claudia Laura-Martinez, Juan Patino, Teresa Wesley, and Leticia Rangel (all employees of the District in various positions). The hearing officer considered the testimony of each of the witnesses present at the hearing, more than forty items of documentary evidence, and the plaintiff's own testimony as well as his responses to the charges and the arguments of his attorney in support of his position. Hearing officer Anderson prepared a written summary of the testimony and evidence presented, along with her findings and conclusions from the hearing. Defendant Washington then discussed the written findings with Anderson and the two agreed to recommend to Vicky Hall, the Chief Human Resources Officer for the District, to terminate the plaintiff's contract.

The hearing officer concluded that the plaintiff had violated the District's contracting and procurement policy by, among other things: (1) attempting to increase the purchase allocation for a foreign language program in Mandarin Chinese to be provided by MyLanguage360 Corporation from $6,000 to $44,000, without following the usual contracting and bidding procedures or engaging the District's Office of Contracting and Procurement; (2) attempting to bypass the Request for Proposal process eventually set up for the Chinese language program by sending an unauthorized email to District principals informing them of the availability of the MyLanguage360 Corporation's program, just one day after the RFP inviting vendors to bid on providing such a program was opened; (3) purporting to inform the Office of Contracting and Procurement in May 2011 that the MyLanguage360 program had been selected from among the RFP applicants, without providing any explanation as to the basis for the selection; and (4) after the competing bidders demonstrated their products for evaluation in July 2011, informing the president of MyLanguage360 Corporation of the

-3-

score assigned to the company's product by evaluators and advising him that his company may want to adjust the pricing of its proposal in order to secure the bid.

The hearing officer found, based on reports from officers of Canadian Customs, that the plaintiff was seen entering Canada on August 2, 2011, a day for which he received his full regular pay, and he did not report his time for the day as vacation or notify his supervisor that he was absent from work.

The hearing officer concluded that the plaintiff violated the District's policies on nepotism and conflicts of interest disclosure by repeatedly misrepresenting or concealing that his niece, Liria Ivezaj, was related to him, when she applied for and eventually was hired to a position in the Department of Multicultural-Multilingual Education that the plaintiff oversaw.

The hearing officer concluded that the plaintiff used state funds without authorization by providing an invalid PCN number to Gregory Stokes of the District Human Resources division, which was used to promote his administrative assistant to a Bilingual Executive Assistant — Technical Level IV, despite the fact that the plaintiff had earlier been informed that no funds were available to fund such a position. The plaintiff contends that the Office of Budget and Compliance has "glitches" in its system and he thought that the PCN number he used was valid.

The hearing officer concluded that the plaintiff violated District policies governing the use of the "P-Card" (presumably a type of credit card) issued to him by making more than $1,000 in purchases of personal or prohibited items between August 19, 2011 and March 6, 2012. The District's policy requires that all personal or prohibited purchases using the P-Card must be reported to the Office of Purchase Card Management and reimbursement in full paid by the employee within 48 hours of any such purchase.

-4-

The hearing officer further concluded that the plaintiff violated the policy on use of a tax-exempt Sam's Club membership card issued in his name, under the authority of the District, by using the card to purchase personal items at Sam's Club between February 27, 2011 and March 27, 2012.

The hearing officer concluded that the plaintiff violated the School Safety Act, 2005 P.A. 129-131, 138, Mich. Comp. Laws § 380.1230d, by failing to report to the District, within three business days, his October 15, 2008 conviction for Operating a Vehicle While Impaired. That statute states that if any school district employee "is charged with a crime listed in section 1535a(1) or 1539b(1) or a violation of a substantially similar law of another state, a political subdivision of this state or another state, or of the United States," the employee must submit a written report of the crime charged within "3 business days after being arraigned for the crime." Mich. Comp. Laws § 380.1230d(1). The enumerations in sections 1535a and 1539b, Mich. Comp. Laws § 380.1535a, 1539b, do not specifically include operating a vehicle while impaired.

The hearing officer concluded that the plaintiff provided his email password to his administrative assistant, contrary to the District's policy regarding password security.

The hearing officer concluded that the plaintiff intimidated staff and interfered with the Office of Inspector General (OIG) investigation by discussing its progress with Gregory Stokes (of the Human Resources division), and Cheryl Jones and Viviana de Bonafede (direct reports under the plaintiff's supervision), and asking those employees what questions the OIG investigator had asked them. The plaintiff also told Ms. de Bonafede that his "job was on the line," asked her to review favorable letters written by other staff members to be presented for his benefit at the hearing, and told her that she was the only member of his staff that refused to discuss with the plaintiff her encounter with the OIG investigator. Gregory Stokes and Claudia Lara-Martinez testified that the

plaintiff spoke with them about the OIG investigation, and that they saw him speaking to other employees about it. Sheryl Jones testified that two days before the disciplinary hearing the plaintiff approached her in an "inappropriate and unprofessional manner," showed her the notice of the hearing, and "accused her in an angry tone" of reporting to defendant Ridgeway her concerns regarding the organization of a multicultural gala event. Ms. Jones testified that the plaintiff asked her why she did not come to him first with her concerns, and stated, "You have caused me problems." Ms. Jones found the plaintiff's approach to be "intimidating and disturbing."

After the day-long hearing, the plaintiff was fired from his administrative position. Washington sent the plaintiff and his attorney a letter on July 27, 2012 telling the plaintiff that his administrative employment contract was canceled immediately. In that same letter, the plaintiff was told that he could have a teaching position for the 2012-13 school year. He accepted that offer and was given a teaching position at a substantially reduced salary. The plaintiff continued in that role until he retired from DPS with 32 years of service in July 2013.

In the counts of the amended complaint that remain, the plaintiff alleges that he was denied procedural due process when the school district terminated him from his administrative position, because the defendants did not conduct an adequate pretermination hearing or provide him with sufficient notice of the grounds for termination. He alleges in Count I of the amended complaint that he was deprived of a property interest; he does not mention a liberty interest. In Count III, he alleges simply that the defendants "wrongfully breached" his employment contract "on July 27, 2012."

-6-

## II.

In their second motion for summary judgment, the defendants argue that the undisputed facts demonstrate that the plaintiff was afforded all the process that was due in his termination hearing before any adverse action was taken against a property interest, no liberty interest was implicated, the individual defendants cannot be liable for breach of contract because they were not parties to the plaintiff's employment contract, and the school district did not breach the plaintiff's employment contract when it fired him from his administrative position for just cause.          S u m m a r y judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  When reviewing the motion record, "[t]he court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Alexander v. CareSource*, 576 F.3d 551, 557-58 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

"The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." *Alexander*, 576 F.3d at 558. (citing *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002)).  "Once that occurs, the party opposing the motion then may not 'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Ibid*.  (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)).

"[T]he party opposing the summary judgment motion must do more than simply show that there is some 'metaphysical doubt as to the material facts.'" *Highland Capital, Inc. v. Franklin Nat'l Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)) (internal quotation marks omitted). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. If the non-moving party, after sufficient opportunity for discovery, is unable to meet his or her burden of proof, summary judgment is clearly proper. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Irrelevant or unnecessary factual disputes do not create genuine issues of material fact. *St. Francis Health Care Centre v. Shalala*, 205 F.3d 937, 943 (6th Cir. 2000). A fact is "material" if its resolution affects the outcome of the lawsuit. *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001). "Materiality" is determined by the substantive law claim. *Boyd v. Baeppler*, 215 F.3d 594, 599 (6th Cir. 2000). An issue is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." *Henson v. Nat'l Aeronautics & Space Admin.*, 14 F.3d 1143, 1148 (6th Cir. 1994) (quoting 477 U.S. at 248).

## A.

As noted earlier, the plaintiff alleges in Count I of the amended complaint that all of the defendants deprived him of a property interest without affording him the procedural due process to which he was entitled. He brings this claim under 42 U.S.C. § 1983.

"To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United

-8-

States (2) caused by a person acting under the color of state law." *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)).  To survive summary judgment, the plaintiff must back up his stated claim with evidence that creates a genuine issue of material fact on all the elements of his claim. *Anderson*, 477 U.S. at 252.  The plaintiff must establish the liability of each individual defendant by that person's own conduct.  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").  It is well settled that "*respondeat superior* is not available as a theory of recovery under section 1983." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 507 (6th Cir. 1996) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)); *see also Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 403 (6th Cir. 2010).  "Section 1983 liability must be premised on more than mere *respondeat superior*, the right to control one's employees." *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009) (citing *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)).

As noted in this Court's earlier opinion, neither defendant Karen Ridgeway nor defendant Shirley Mobley-Woods made the decision to terminate the plaintiff from his administrative position, nor did they conduct the discipline hearing.  The plaintiff contends that Ridgeway confronted the plaintiff at the hearing, made clear that she was "not here for [him]," and sat near the witness chair. However, those facts do not suggest any activity that amounts to a denial of procedural due process. Because the plaintiff has not pointed to any other evidence that establishes the elements of his claim against these two defendants, summary judgment must be granted to them on Count I of the amended complaint.

In order to establish a procedural due process violation, the plaintiff must show that he (1) had a life, liberty, or property interest protected by the Constitution; (2) was deprived of that interest by a state actor; and (3) was not afforded timely and adequate process under law. *Waeschle v. Dragovic*, 576 F.3d 539, 544 (6th Cir. 2009). "Property interests are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972) (quotations omitted)). The defendants concede for the purpose of the present motion that the plaintiff enjoyed a protected property interest in his just-cause employment contract. In their briefs, the parties mention in passing a possible claim related to a liberty interest, but such a claim does not appear in the amended complaint and therefore plays no role in this litigation. As the plaintiff lost his administrative position (and thus suffered a deprivation), the only remaining question is whether the school district and its decision-maker, both state actors, afforded the plaintiff the procedural process to which he was due. The Court believes that the undisputed facts show that they did.

"The right to procedural due process requires that when a state seeks to terminate a protected interest it must afford notice and opportunity for hearing appropriate to the nature of the case." *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 296 (6th Cir. 2006) (citing *Roth*, 408 U.S. at 570) (quotations omitted). When, as here, a plaintiff is entitled to due process, "a court must then determine whether the plaintiff was provided with sufficient notice and the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Benjamin v.*

*Brachman*, 246 F. App'x 905, 914 (6th Cir. 2007) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333

(1976)).

In *Mathews*, the Supreme Court set forth three factors that a court must weigh in its

procedural due process analysis:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

*Mathews*, 424 U.S. at 335.

In *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1 (1979),

the Supreme Court expanded upon the the flexible standard set forth in *Mathews*:

> It is axiomatic that due process "is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. [471, 481 (1972)]; *Cafeteria & Restaurant Workers v. McElroy*, 367 U.S. 886, 895 (1961); *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 162-163 (1951) (Frankfurter, J., concurring). The function of legal process, as that concept is embodied in the Constitution, and in the realm of factfinding, is to minimize the risk of erroneous decisions. Because of the broad spectrum of concerns to which the term must apply, flexibility is necessary to gear the process to the particular need; the quantum and quality of the process due in a particular situation depend upon the need to serve the purpose of minimizing the risk of error. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

*Greenholtz*, 442 U.S. at 12-13.  In *Mathews*, the Court made clear that

> [t]he judicial model of an evidentiary hearing is neither a required, nor even the most effective, method of decisionmaking in all circumstances. . . .  All that is necessary is that the procedures be tailored, in light of the decision to be made,  to "the capacities and circumstances of those who are to be heard," *Goldberg v. Kelly*, 397 U.S. at 268-269 (footnote omitted), to insure that they are given a meaningful opportunity to present their case.

*Mathews*, 424 U.S. 319, 348-49 (1976).  The Sixth Circuit likewise has explained that "the fundamental requirement of procedural due process is that an individual be given an opportunity to be heard at a meaningful time and in a meaningful manner." *Morrison v. Warren*, 375 F.3d 468, 475 (6th Cir. 2004) (citing *Mathews*, 424 U.S. at 335 (1976)).

In *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985), the Supreme Court reiterated that due process simply requires notice and some sort of chance to be heard.  "The essential requirements of due process . . . are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).  "The predeprivation process need not always be elaborate, however; the amount of process required depends, in part, on the importance of the interests at stake." *Leary v. Daeschner*, 228 F.3d 729, 742 (6th Cir. 2000) (citing *Loudermill*, 470 U.S. at 542; *Winegar v. Des Moines Indep. Community Sch. Dist.*, 20 F.3d 895, 899-901 (8th Cir. 1994)).

The plaintiff contends that his procedural due process rights were denied because the hearing was concluded at the end of an extended presentation of the evidence gathered by the school district's investigator, and he was not allowed to present a number of witnesses and exhibits that he wanted to offer to support his defense.  But the Due Process Clause does not require that the plaintiff be allowed the full-blown process of a trial; instead, it mandates only that he have "an opportunity to be heard at a meaningful time and in a meaningful manner." *Morrison v. Warren*, 375 F.3d 468, 475 (6th Cir. 2004) (citing *Mathews*, 424 U.S. at 335 (1976)).  In this case, the "[p]laintiff was given ample opportunity to be heard" during the course of the lengthy disciplinary hearing, and the

-12-

opportunity he was given to confront and rebut the evidence against him was sufficient to meet the flexible standard set forth in *Mathews*.

Similar to the plaintiff here, the discharged employee in *Benjamin v. Brachman*, 246 F. App'x 905 (6th Cir. 2007), "complain[ed] that he was given only one afternoon to present his case and was not permitted to discuss all of the patients who had been evaluated during the peer review." But the Sixth Circuit concluded that the process afforded was adequate and that the "[p]laintiff was given ample opportunity to be heard," where he was allowed to submit a written response to the testimony that was taken at the hearing, "attended the third day of the hearings with his attorney," "had the opportunity to respond case by case to [the] testimony regarding his review of patient charts and [to] answer questions posed by [the hearing board] members regarding those patients," and "presented his defense for approximately three hours." *Benjamin*, 246 F. App'x at 916-17. Here it is undisputed that the plaintiff received notice of and appeared at the day-long disciplinary hearing. At the hearing, he was accompanied by his counsel of record, who was allowed to argue on his behalf; heard the testimony of all the witnesses and saw the documents that were considered by the hearing officer; and was allowed to testify and provide his own responses in opposition to the charges, all of which were noted in the detailed written summary prepared by the hearing officer. Also, on June 13, 2012, the day after the hearing, the plaintiff submitted to the hearing officer by email a supplementary written response to the charges offering rebuttals and corrections on several points.

The plaintiff also contends that the defendants' failure to honor specific state law statutory requirements for notification of "nonrenewal" of a school administrator's contract in itself supports his procedural due process claim. The plaintiff cites Mich. Comp. Laws § 380.471a(2), which states

that "[n]otification of nonrenewal of [a school administrator's] contract shall be given in writing []
at least 60 days before the termination date of the contract."  He argues that the defendants did not
provide him with the required 60-day notice, because his contract was "nonrenewed" by the
termination letter that was sent to him on July 27, 2012, but he received notice that his contract
would not be renewed at the earliest on May 30, 2012, when he received the notice of disciplinary
hearing.  This argument is immaterial to the due process claim because the July 27 notice of
termination was just that — a notice of *termination* of the plaintiff's then-effective contract of
employment.  The plaintiff concedes that his contract — just like the contracts of all other
administrative employees of the district — was *renewed* in the usual course of business by the offer
and acceptance of a renewal contract for the 2012-13 year, which occurred as a matter of routine
several weeks before the disciplinary hearing.  The notice sent to the plaintiff on July 27, 2012 was
not a notice of "nonrenewal" of his contract, but rather it was a notice of termination of the contract
that already had been renewed, pursuant to the "good cause" termination clause.

   The process the plaintiff received in the form of a full-blown, pre-termination adversary
hearing satisfied the Due Process Clause many times over.  There is no question that he was given
"notice of the charges against him, an explanation of the employer's evidence, and an opportunity
to present his side of the story."  *Loudermill*, 470 U.S. at 546.  In fact, during his testimony, the
plaintiff actually admitted some of the conduct that formed the bases of the charges against him, as
detailed in the Court's previous opinion.  And all of that occurred *before* any adverse action was
taken.  Certainly, the plaintiff was afforded an actual hearing "in a meaningful manner" and at a
"meaningful time."  *Loudermill v. Cleveland Bd. of Educ.*, 721 F.2d 550, 563 (6th Cir.1983), *aff'd*,
470 U.S. 532 (1985).  The Due Process Clause requires no more.

B.

To state a claim for breach of contract under Michigan law, a plaintiff first must establish the elements of a valid contract. *Pawlak v. Redox Corp.*, 182 Mich. App. 758, 765, 453, N.W.2d 304, 307 (1990). The elements of a valid contract in Michigan are (1) parties competent to contract, (2) a proper subject matter, (3) a legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation. *Thomas v. Leja*, 187 Mich. App. 418, 468 N.W.2d 58, 60 (1990). Once a valid contract has been established, the plaintiff then must prove (1) the terms of the contract, (2) breach of those terms by the defendant, and (3) injury to the plaintiff resulting from the breach. *In re Brown*, 342 F.3d 620, 628 (6th Cir. 2003).

The employment contract stated that the plaintiff could be terminated for just cause. The school district outlined several grounds that it believed satisfied the just cause rubric, but only one is sufficient to establish that the contract was honored. *See Young v. Am. Diabetes Assoc.*, 30 F. App'x 360, 365 (6th Cir. 2002). As noted earlier, the contract expressly provided, among other things, that the plaintiff could be terminated for violation of the specific nepotism provision in the contract, as well as the other violations of District work rules and policies. The Court pointed out in the earlier opinion that in finding that the plaintiff violated the District's nepotism policies, the hearing officer determined that, on March 2, 2011, the plaintiff emailed Gregory Stokes in the District's Human Resources division and asked him to add the name of Liria Ivezaj — the plaintiff's niece — to the eligibility pool for hiring as a Bilingual Education Technician in the Department of Multicultural-Multilingual Education. The plaintiff later provided an authorization number to Mr. Stokes for the hiring of Ms. Ivezaj to the Bilingual Education position. Liria Ivezaj asserts that she found the job and applied for it without her uncle's knowledge, but the hearing officer found, and

-15-

the plaintiff does not deny, that Ms. Ivezaj sent an email to the District's Human Resources division on March 2, 2011 stating that the plaintiff "(no relation to me, common last name)" had told her that she should inquire about the Bilingual Education position. Ms. Ivezaj admitted that after she applied for the job, she discussed the District's anti-nepotism policy with her uncle and asked if it would be a problem, and he told her that as long as she did not directly report to him it would not be a problem.

The plaintiff does not dispute that he recommended to Stokes that the district should hire Ms. Ivezaj, or that he later provided an authorization number for her hiring. When a supervisor in the HR division became suspicious of Mr. Ivezaj's recommendation, he directed Stokes to ask Mr. Ivezaj if the two were related. On March 17, 2011, Ivezaj stated in an email to Stokes, "consistent with the DPS Conflict of Interest Policy, this is to certify that Liria Ivezaj is not related to me." However, in a 2012 email to defendant Ridgeway, concerning his niece's assignment in the Department of Multicultural-Multilingual Education, Ivezaj stated that he "may have misinterpreted the [conflict of interest] policy" because "it does not list niece as a relative." The plaintiff asserts that he never supervised his niece and she reported to the principal at the school where she worked. In her own affidavit, Liria Ivezaj stated that she was hired by the District and assigned to the Farewell school, which was not one of the schools overseen by the plaintiff, and that she never reported to the plaintiff.

The DPS Conflict of Interest Policy states that "[i]t is the policy of the Detroit Public Schools that all [] employees shall report any actual or potential conflicts of interest, questions of conflicts of interest, or the appearance of conflicts of interest in accordance with this policy for prompt resolution." The policy imposes a duty on all employees to "disclose any actual or potential

-16-

conflicts of interest or matters that may give the appearance of a conflict of interest" at the time of hiring and throughout their term of employment, and it states that "[i]t is the responsibility of each Board member and each employee to report any actual conflicts of interest, potential conflicts of interest or the appearance of a conflict of interest prior to their occurrence or immediately upon becoming aware of the conflict of interest." The policy states that violations could lead to disciplinary action including termination.

As to "Nepotism," the policy states in particular that "[a]t no time may any . . . employee be directly responsible for the supervision or evaluation of a member of his or her immediate family, domestic partner, relative, and/or significant other." The term "relative" under the anti-nepotism policy is defined to mean "a spouse, child, parent, sibling, grandparent, aunt, uncle, first cousin, or corresponding in-law or step-relation."

The plaintiff's employment contract contains a somewhat stricter specific prohibition on nepotism. Under the section headed "responsibilities," the contract states that:

> Employee shall not *directly or indirectly supervise* any member of Employee's Immediate Family. For purposes of this Agreement, "Immediate Family" shall be defined as mother, father, sister, brother, son, daughter, first cousin, nephew, *niece*, significant other or any person residing with Employee. In the event a member of Employee's Immediate Family is assigned to Employee's work location (or may be subject to Employee's supervision, even if not at the same location) as a result of hiring, reorganization or transfer, Employee, in writing, shall immediately notify Employee's direct supervisor and the District Department of Human Resources for resolution.

Administrative Employment Agreement 2012-13 ¶ 4.3 (Pg ID 687) (emphasis added).

The hearing officer highlighted as a "serious concern" the charge that the plaintiff repeatedly lied about and misrepresented or concealed the fact that he was related to his niece, Liria Ivezaj, during the course of her hiring into a department that he oversaw, and while he was actively engaged

-17-

in recommending and authorizing her hiring.  The plaintiff does not offer any substantive rebuttal to the factual basis of this charge, but relies solely on his strained reading of the Conflict of Interest policy, which he contends does not specifically include "niece" within the definition of "relative." That reading, however, neglects the overriding duty expressly imposed on all employees under the policy, which requires proactive disclosure of any "matters that may give the appearance of a conflict of interest."  Moreover, the District regarded its stance on nepotism as a sufficiently serious concern that a more explicit and broader prohibition was incorporated into an express term of the plaintiff's employment contract, which prohibited him from directly or indirectly supervising any member of his "immediate family," specifically including "niece" in the definition of that term.  The plaintiff does not deny that, in response to pointed questioning from the District's Human Resources division he replied that he was "not related" to his niece.  That was a lie.  And it was a lie that plainly was intended to procure the hiring of Ms. Ivezaj into a position that she was not allowed to occupy under the terms of the plaintiff's employment contract.  There is no question that the defendants had just cause to terminate the plaintiff's administrative employment contract.

In his response to the present motion, however, the plaintiff does not question the validity of the just cause dismissal.  Instead, he contends that the termination of his 2012-13 contract is "void" because the school district terminated him on July 27, 2012 (after he was offered and had accepted a renewal contract for the upcoming school year) based on conduct that occurred during the 2011-12 contract term. The plaintiff contends that the offer of the renewal contract one week before the disciplinary hearing "demonstrated to Dr. Ivezaj that either there was a favorable finding or that DPS acquiesced in Dr. Ivezaj's continued employment even if they had found violations of work rules, policies, or procedures," and that he relied on that representation to his detriment by not

seeking other employment for the 2012-13 school year. The plaintiff has not pointed to any language in the contract that restricts application of the good cause termination provision to only those situations in which misconduct occurs and is punished during the term of a particular contract year. Any such interpretation would lead to an absurd result directly at odds with the plain language of the agreement. Under the plaintiff's reading, the school district would be barred from terminating an employee whose contract was renewed in the usual course of business, unless it managed fully to investigate and adjudicate any claims of wrongdoing before the close of the contract year in which the violations occurred. The plaintiff has not identified any material distinction between the good cause termination provisions of the 2011-12 and 2012-13 contracts of employment. Those provisions do not contain any language imposing a temporal limitation on the school district's termination rights that would bar the school district from terminating an employee for misconduct that occurred during a previous term. The routine renewal of the one-year employment contract is immaterial to the question whether the defendants had just cause to terminate the plaintiff's employment as an administrator.

### III.

The plaintiff has not presented admissible evidence that creates a triable issue of fact on the essential elements of the claims presented in Counts I and III of the amended complaint.

Accordingly, it is **ORDERED** that the defendants' second motion for summary judgment [dkt. #95] is **GRANTED**.

It is further **ORDERED** that the amended complaint is **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that the motion hearing scheduled for December 3, 2015 is **CANCELLED**.

It is further **ORDERED** that the defendants' motion *in limine* [dkt. #65], and the plaintiff's

motion to file a supplemental response brief [dkt. #110] are **DISMISSED as moot**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   November 19, 2015

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served
upon each attorney or party of record herein by electronic means or first
class U.S. mail on November 19, 2015.

s/Susan Pinkowski
SUSAN PINKOWSKI